JULIO SALAMAN, ADMINISTRATOR
(ESTATE OF JAIME C. SALAMAN)
*v.* CITY OF WATERBURY ET AL.
(SC 15653)

Callahan, C. J., and Norcott, Katz, McDonald and Peters, Js.

Argued January 14—officially released August 11, 1998

*Linda L. Morkan,* with whom, on the brief, was *John H. Gorman,* assistant corporation counsel, for the appellant (named defendant).

*Jonathan J. Einhorn,* with whom, were *Steven D. Ecker* and, on the brief, *Leigh A. Newman,* for the appellee (plaintiff).

*Opinion*

MCDONALD, J. The named defendant,[1] the city of Waterbury (city), appeals from the Appellate Court's decision reversing the trial court's judgment granting the city's motion for judgment notwithstanding the verdict. *Salaman* v. *Waterbury,* 44 Conn. App. 211, 687 A.2d 1318 (1997). There are two certified issues in this appeal: One, "[d]id the Appellate Court correctly conclude that the trial court had improperly set aside the verdict rendered in favor of the plaintiff because the plaintiff had failed to establish that (1) the city owed a duty to the plaintiff's decedent and (2) that the city had breached any such duty?" And two, "[d]id the Appellate Court correctly conclude that the trial court had granted the city's motion for judgment notwithstanding the verdict on a ground that was not first raised in the city's motion for directed verdict?" *Salaman* v. *Waterbury,*

---

[1] New Opportunities for Waterbury, Inc., and Michael Trotman are also defendants, but are not parties to this appeal.

240 Conn. 921, 692 A.2d 816 (1997). We reverse the judgment of the Appellate Court.

The plaintiff, Julio Salaman, administrator of the estate of his decedent, Jaime C. Salaman, brought an action against the city in three counts: nuisance, custodial negligence[2] and premises liability negligence. The jury reasonably could have found the following facts. The plaintiff's decedent drowned while attempting to swim across the East Mountain Reservoir (reservoir) in Waterbury on September 2, 1991. Approximately halfway across the reservoir, he experienced difficulty swimming and called for help. Two people tried to rescue the decedent, but were unsuccessful.

At the time of his death, the decedent was part of a group of people from the defendant New Opportunities for Waterbury, Inc. (NOW), a residential counseling program. Following a picnic and a basketball game, the group, supervised by the defendant Michael Trotman, a residential supervisor employed by NOW, had traveled by van to the reservoir to swim. The reservoir, which was owned by the city, was not surrounded by a fence. There was an area to the side of the access road that was used for parking, and a trail that led to the water. The reservoir had not been used as a public water supply for more than thirty years, and the city allowed fishing with a permit. On occasion, some people may have used the reservoir for swimming. The city, however, did not permit swimming in the reservoir. There were no lifeguards or lifesaving equipment at the reservoir. There were several old signs posted on the reservoir property which read: "City of Waterbury, No Trespassing, Public Water Supply." There were no such signs in the parking area, on any of the trails or at the beach area. The decedent, a twenty-two year old former

---

[2] The count alleging custodial negligence with respect to the city was withdrawn by the plaintiff prior to trial.

high school athlete, was an excellent swimmer who had been swimming since childhood. *Salaman* v. *Waterbury*, supra, 44 Conn. App. 212–13.

After the conclusion of the plaintiff's case, the city moved for a directed verdict on all counts. The court granted the motion with respect to the nuisance count, but denied the motion as to the negligence count that was based on premises liability. The basis for the city's motion for a directed verdict on that count was that the decedent was a trespasser as a matter of law. Id., 213.

In its charge to the jury, the trial court, after explaining the status of a trespasser on a landowner's property, stated: "Therefore, if you find that the plaintiff's decedent . . . was a trespasser upon the reservoir property, then you must further find the [city] owed no duty to [him]. If you find no duty, then you must return a verdict in favor of the [city] . . . ." The trial court also instructed as to the duty owed a licensee as follows: "But if you find that the group had express or implied authority to be on the premises, then they are licensees. And in order to establish liability as to a licensee, three essential elements must be present. One, that the [city] knew of the presence of the [decedent]; two, that it thereafter failed to . . . warn him of a dangerous condition of which it knew and of which it could not reasonably assume the licensee knew of or which by reasonable use of his faculties would observe; and three, that such failure constituted the proximate cause of the [decedent's] injuries. . . . In order for the plaintiff to prevail, evidence must show that the circumstances were such that the knowledge of [the decedent's] presence could be imputed to the [city]. Such circumstances are sufficient to impute knowledge of presence to the [city] only where they are the equivalent of actual knowledge. This equivalent arises where the [city] could have and should have reasonably antici-

pated the [decedent's] presence on the premises because of the regular pattern of such presence at the approximate time of day and the place of injury."

The jury returned a verdict in favor of the plaintiff, allocating comparative negligence as follows: the city, 28 percent; NOW and Trotman, 57 percent; and the plaintiff's decedent, 15 percent. The jury awarded total damages of $1,226,264.60, and the city's allocation amounted to $343,354.08. Id., 214.

Thereafter, the trial court granted the city's motions to set aside the verdict and for judgment notwithstanding the verdict, concluding that the evidence was insufficient to impose liability on the city. The trial court concluded that trespasser liability could not be imposed as there was no evidence that the city's intentional or reckless conduct caused the drowning. The trial court also concluded that licensee liability could not be imposed because there was insufficient evidence to demonstrate that: (1) the city had actual or constructive knowledge of the presence of the decedent; (2) the city failed to exercise reasonable care by failing to warn him of any dangerous conditions that it reasonably could not have assumed the licensee knew of or by reasonable use of his faculties could observe; and (3) the city's failure to exercise reasonable care caused the decedent's drowning.

The Appellate Court reversed the trial court's judgment, concluding that the jury could have found that the decedent was a licensee because the jury reasonably could have inferred that the city had constructive knowledge of the general public's use of the reservoir for swimming. The Appellate Court concluded that this constructive knowledge gave rise to the duty "to exercise reasonable care to warn . . . of conditions posing an unreasonable risk of harm." Id., 218. On the basis of

that conclusion, the Appellate Court further concluded that the verdict should not have been set aside. Id., 219. This appeal followed.

I

With respect to the first certified issue, the city claims that the decision of the Appellate Court should be reversed because: (1) there was insufficient evidence to establish that the decedent was owed a duty as a licensee; (2) the Appellate Court misapplied the standard for determining whether a duty was owed to the decedent as a licensee; and (3) there was insufficient evidence to establish that any duty owed to the decedent was breached.

The city claims that its motion to set aside the verdict was properly granted because there was insufficient evidence to warrant recovery by the decedent as a licensee. We agree with the city, and, therefore, reverse the judgment of the Appellate Court.

"[The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion . . . ." (Internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 206, 579 A.2d 69 (1990). "In reviewing the court's action in rendering a judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the [plaintiff]." (Internal quotation marks omitted.) Id., 207. With these legal principles in mind, we conclude that the jury reasonably could not have found that the city breached a duty to the decedent as a licensee to warn him concerning any dangerous conditions on the premises.

The status of an entrant on another's land, be it trespasser, licensee or invitee, determines the duty that is owed to the entrant while he or she is on a landowner's

property. *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 327, 612 A.2d 1197 (1992). In this case, the jury was properly instructed as to the city's duty to the decedent if he was either a trespasser or a licensee. If the decedent was a trespasser, the city's only duty was to refrain from causing him injury "intentionally, or by willful, wanton or reckless conduct." (Internal quotation marks omitted.) *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 558, 707 A.2d 15 (1998). It is undisputed that the city did not intentionally or recklessly injure the decedent and the trial court was correct in its instructions. Therefore, as the Appellate Court observed, the jury must have concluded that the decedent was a licensee or it could not have imposed liability on the city. *Salaman* v. *Waterbury*, supra, 44 Conn. App. 218.

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." (Internal quotation marks omitted.) *Laube* v. *Stevenson*, 137 Conn. 469, 473, 78 A.2d 693 (1951). The duty that a landowner "owes to a licensee . . . does not ordinarily encompass the responsibility to keep the property in a reasonably safe condition, because the licensee must take the premises as he [or she] finds them. . . . If the licensor actually or constructively knows of the licensee's presence on the premises, however, the licensor must use reasonable care both to refrain from actively subjecting him [or her] to danger and to warn him [or her] of dangerous conditions which the possessor knows of but which he [or she] cannot reasonably assume that the licensee knows of or by reasonable use of his [or her] faculties would observe." (Citations omitted; internal quotation marks omitted.) *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 223 Conn. 327–29. The trial court's instruction to the jury on

licensee liability was consistent with these principles and therefore correct.

In order to prove that the decedent was a licensee, the plaintiff was required to prove that the decedent was on the city's land with its permission or by its express or implied invitation. In this case, we need not examine the record to determine if there was some evidence from which the jury reasonably might have concluded that the decedent was a licensee. Even if it is assumed that he was a licensee, we conclude that the evidence does not support a finding that the city breached any duty to the decedent as a licensee.

The plaintiff was required to establish that the city breached the duty owed a licensee. After reviewing the evidence, we conclude that the jury reasonably could not have found that the city breached that duty. There was no claim or evidence to support a finding that the city actively subjected the decedent to danger. The city's duty, therefore, concerned warnings as to the hidden hazards upon its property. The city's duty to a licensee was to warn of "dangerous conditions which the owner knows of but which [the owner] cannot reasonably assume that the licensee knows of or by a reasonable use of [the licensee's] faculties would observe." *Laube* v. *Stevenson*, supra, 137 Conn. 474; *Deacy* v. *McDonnell*, 131 Conn. 101, 104, 38 A.2d 181 (1944).

The plaintiff argues that, because the reservoir was a dangerous condition, the city was required to post signs advising "Danger: Swimming is absolutely prohibited. No lifeguards on duty. No lifesaving equipment." We cannot conclude, however, that the body of water constituting the reservoir itself should be considered a hidden, dangerous condition and the plaintiff did not offer any evidence indicative of hidden hazards in the

reservoir. The city's expert witness inspected the reservoir and testified that it contained no "hidden hazards."[3] He concluded that "[t]here were no drop-offs, there were no currents, there was no underwater debris, there were no waves." There was no contrary evidence.

The plaintiff argues that the decedent should have been warned that there were no lifeguards or lifesaving equipment at the reservoir. Under the circumstances of this case, the dangers of swimming in an unguarded body of water were such that the decedent should have, by the reasonable use of his faculties, been aware of such dangers and no such warning was necessary. Here, there was no evidence that the city encouraged or permitted swimming at the reservoir or that NOW, Trotman, the decedent or anyone else had a permit, invitation or permission to swim there. The city was entitled to assume that any reasonable person would appreciate the risk of drowning while swimming in the reservoir. We conclude that the city was not required to remind adult swimmers of the obvious and commonly known danger of drowning inherent in swimming.

A rule requiring a property owner to post warning signs about the dangers inherent in swimming is unreasonable. In Connecticut, a small state, hundreds of miles of shoreline would be exposed to this unreasonable requirement. Property owners who have water on their land are entitled to assume that a reasonable adult would be aware of the risk of drowning in a body of water.

We conclude that the evidence does not support a finding that the city breached any duty to warn the

---

[3] The city's expert witness defined "hidden hazards" commonly found in water as hazards such as "a drop-off; at a surf beach . . . a run-out, an area of water that really takes you and just pulls you off shore; littoral currents, currents that sweep you down the beach."

decedent, an adult swimmer, of hidden dangers. We, therefore, reverse the judgment of the Appellate Court.

## II

We now turn to the issue of whether the trial court could have granted the city's motion for judgment notwithstanding the verdict. We conclude that the trial court's action was proper.

The city had moved for a directed verdict at the close of the plaintiff's case. It argued that, as to the premises liability negligence count, the sole count against it to go to the jury, the decedent was a trespasser as a matter of law, and that the plaintiff had not established a basis for the city's liability to a trespasser. The trial court denied the motion. After the verdict was returned, the city filed its motion for judgment notwithstanding the verdict on the ground that there was no evidence supporting liability to a licensee, and the motion was granted on that ground. At that time, NOW and Trotman filed a motion for remittitur, which, if granted, could have set the verdict aside as to them and resulted in a new trial. General Statutes § 52-228; Practice Book § 320, now Practice Book (1998 Rev.) § 16-35; *Brunetto* v. *Royal Exchange Assurance Co.*, 126 Conn. 569, 571–72, 13 A.2d 138 (1940). The court denied the motion for remittitur at the same time that it granted the city's motion for judgment notwithstanding the verdict. The Appellate Court concluded that the trial court improperly granted the city's motion for judgment notwithstanding the verdict. The Appellate Court determined that the city had based its motion for a directed verdict solely on the ground that the decedent was a trespasser as a matter of law. *Salaman* v. *Waterbury*, supra, 44 Conn. App. 216. That court observed that, in its motion, the city had not raised the issue of whether there was sufficient evidence to find that the decedent was a

licensee.[4] Id. The Appellate Court concluded that, as a procedural matter, the trial court improperly granted the city's motion for judgment notwithstanding the verdict on a different basis, but refused to reverse the trial court on that basis. Id. The plaintiff advances that procedural argument before us.

The rules of practice establish a procedure pursuant to which a motion for a directed verdict, if denied, is considered *renewed* by the motion for judgment notwithstanding the verdict. Practice Book § 321, now Practice Book (1998 Rev.) § 16-37; 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 203, p. 823. Section 321 of the Practice Book, provides for a motion for judgment notwithstanding the verdict "in accordance with [the party's] motion for a directed verdict." *Berry* v. *Loiseau*, 223 Conn. 786, 819, 614 A.2d 414 (1992); see *State* v. *Avcollie*, 178 Conn. 450, 455, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).

The purpose of the motion for directed verdict with respect to the motions to set aside and for judgment notwithstanding the verdict is to give notice to the trial court. *State* v. *Avcollie*, supra, 178 Conn. 455. In this case, the motions to set aside the verdict and for judgment notwithstanding the verdict were sufficiently in accordance with the motion for directed verdict. The motion for a directed verdict adequately alerted the plaintiff and the trial court to the legal issue of the decedent's entrant status, upon which the trial court based its decision in setting aside the verdict. The plaintiff had introduced some evidence that people were swimming in the reservoir, which was relevant to both

---

[4] We have observed that "[t]he trial court has inherent power to set aside the verdict" and "the Practice Book merely lays out an advisable manner of exercising [that power]." *State* v. *Avcollie*, supra, 178 Conn. 455. The Appellate Court recognized this principle. *Saluman* v. *Waterbury*, supra, 44 Conn. App. 216 n.3.

licensee and trespasser status. See *Maffucci* v. *Royal Park Ltd. Partnership*, supra, 243 Conn. 559; *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 223 Conn. 327–29. The motion for a directed verdict, based on the decedent's status as a trespasser, therefore, addressed the issue of sufficiency of the evidence to support a verdict based on licensee status. We conclude, therefore, that the trial court and the plaintiff were given adequate notice of the city's claim that there was insufficient evidence that the decedent was other than a trespasser and thereby could be considered a licensee. We conclude that the trial court properly could have granted the motion upon the ground on which it relied.

The plaintiff also makes the argument that by granting the city's motion after the jury had apportioned liability, the trial court unfairly deprived him of the percentage of damages allocated against the city. It may be that a plaintiff, if alerted by a motion for a directed verdict to a deficiency in his or her case, and fearing the later loss of an apportioned part of a jury award, might withdraw the case against one defendant. A plaintiff might also rely, in not doing so, upon a defendant's failure to raise the issue before the case is submitted to the jury. If a defendant insists upon apportionment of an award, this scenario might present issues of fairness and justice requiring strict adherence to the rules of practice. See *State* v. *Avcollie*, supra, 178 Conn. 455.

In the circumstances of this case, the plaintiff could have urged the trial court, if inclined to rule against him, to order a new trial against NOW and Trotman who arguably would benefit by the amount of the vacated apportioned award to his detriment. He could also have urged the trial court to deny the city's motion based on these considerations. He did neither. The plaintiff did not raise this issue before the trial court at any time, and he did not urge, as he does now, that the trial court should have granted a new trial as to NOW and Trotman when the

city's motion was to be granted. Consequently, NOW and Trotman are not involved in this appeal. Since the plaintiff did not present this issue to the trial court, he is not aggrieved by any decision of the trial court, and he cannot now raise it on appeal. Practice Book § 4000, now Practice Book (1998 Rev.) § 61-1.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion, CALLAHAN, C. J., and NORCOTT, J., concurred.

KATZ, J., with whom PETERS, J., joins, concurring. It has long been the rule that "[a] motion for a directed verdict is a prerequisite to the filing of a motion to set aside the verdict." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.,* 245 Conn. 1, 49, 612 A.2d 742 (1998); see *Frankovitch* v. *Burton,* 185 Conn. 14, 15 n.2, 440 A.2d 254 (1981); *Cruz* v. *Drezek,* 175 Conn. 230, 232, 397 A.2d 1335 (1978); see also Practice Book § 321, now Practice Book (1998 Rev.) § 16-37 ("a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered *in accordance with his motion for a directed verdict*" [emphasis added]); W. Gallagher, Post-trial Motions (1980) p. 22 ("an absolute prerequisite to the motion under Section 321 is the filing of the motion for directed verdict").

On appeal, the named defendant, the city of Waterbury (defendant), does not argue that a motion for directed verdict is not a prerequisite to a motion for judgment notwithstanding the verdict or to set aside the verdict. Implicitly recognizing the aforementioned authority, the defendant instead argues that, in the present case, the motion to set aside the verdict and for judgment notwithstanding the verdict was filed on the

*same grounds* as the motion for a directed verdict because it adequately alerted the plaintiff to the legal issue, namely, the entrant status of the plaintiff's decedent, on which the trial court based its decision. It appears that the real dispute on appeal is not whether the motion for a directed verdict must give adequate notice of the grounds presented in the motion to set aside the verdict and for judgment notwithstanding the verdict but, rather, whether the notice provided by the motion for a directed verdict in the present case, which explicitly mentioned only trespasser status, was adequate.

By addressing the duty to warn a licensee of hidden hazards, the majority implicitly concludes that there was sufficient evidence that the defendant had constructive knowledge of the presence of the plaintiff's decedent at the reservoir. Evidence of the defendant's awareness that people were swimming in the reservoir is relevant to both trespasser and licensee status, although the scope and nature of the duties owed differ. See *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 559, 707 A.2d 15 (1998) (duty owed where defendant knows or should know "that trespassers constantly intrude upon a limited area of the land" [internal quotation marks omitted]); *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 327–29, 612 A.2d 1197 (1992) (duty owed to licensee where defendant has actual or constructive knowledge of licensee's presence).

The motion for a directed verdict in this case addressing the status of the plaintiff's decedent as a trespasser therefore incorporated the issue of whether the evidence triggering the duty to warn was sufficient to support a verdict based on licensee status. The jury was instructed as to the duty owed to both a licensee and a trespasser and evidence was presented at trial that bore on the issue of whether the defendant had

actual or constructive notice that people were swimming in the reservoir. Furthermore, the plaintiff argued only that the defendant should have *warned* of the hidden hazards associated with the reservoir—protections that apply to a known trespasser as well as a licensee. *Maffucci* v. *Royal Park Ltd. Partnership*, supra, 243 Conn. 559–60.

Moreover, the record itself demonstrates that the plaintiff was not deprived of the notice of the defendant's claim of insufficient evidence to which he was entitled pursuant to Practice Book § 16-37. The plaintiff makes no claim that the allegedly underinclusive motion for a directed verdict dissuaded him from presenting relevant evidence. For that reason, he cannot prevail on his argument that the motion, as drafted, had the effect of depriving him of his constitutional right to a jury trial on factual issues. Similarly, the plaintiff makes no claim that the motion, as drafted, interfered either with his framing of his own requests to charge or with the trial court's instructions concerning the duties owed to trespassers and licensees. In sum, the plaintiff was neither surprised nor prejudiced by the defendant's motion to set aside the verdict. Cf. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 49–52.

Accordingly, I concur.