[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
This action was brought by the plaintiff, Lorraine Lovell, for injuries sustained in a fall in the parking lot of the defendant, St. John the Apostle Church (St. John's).[1] The pleadings, affidavits and other documents presented on the motion for summary judgment reveal the following facts.
On December 29, 1995, at approximately 4:30 p.m., Lovell drove into a driveway adjacent to the Pizzarama Restaurant of Plainfield, Inc. (Pizzarama) and parked in a parking lot located behind the restaurant. After making her purchase in Pizzarama, Lovell exited the restaurant and proceeded back to her vehicle. While walking on the driveway, Lovell slipped and fell due to an accumulation of ice and/or snow on the driveway's surface, sustaining personal injuries. (See Plaintiff's Amended Complaint, ¶ 4; Plaintiff's Admissions, ¶¶ 1, 9.) Prior to the fall, Lovell observed ice and snow on both the driveway and parking lot surfaces. (See Plaintiff's Admissions, ¶¶ 2, 4, 6, 7, 10.) The lighting in both areas was sufficient for this observation. (See Plaintiff's Admissions, ¶ 3.) Immediately after her fall, Lovell again observed an uneven portion of ice around the area where she fell. (See Plaintiff's Admissions, ¶¶ 11, 12.) Constantine (Gus) Kontoudakis, an owner of Pizzarama, also observed lumps of snow in the area while assisting Lovell after her fall. (See Deposition of Gus Kontoudakis, October 19, 1998 [Kontoudakis Deposition], pp. 11, 43.)
At such time, both the driveway and parking lot located at 10-17 Railroad Avenue in Plainfield, CT, were owned and maintained by St. John's. (See St. John's Answers to Interrogatories, nos. 2, 3; Deposition of Reverend Charles R. LeBlanc, March 26, 1998 [LeBlanc Deposition], p. 13.) Pizzarama's patrons were permitted to park in St. CT Page 5637 John's parking lot pursuant to an "unwritten agreement" between St. John's and Kontoudakis. (See LeBlanc Deposition, p. 14.) Pizzarama neither owned nor maintained a separate parking facility for use by its patrons. (See Kontoudakis Deposition, p. 20.)
On August 7, 1998, Lovell filed an amended complaint alleging in count one that her fall and resulting injuries were due to an accumulation of ice and/or snow on St. John's driveway. Lovell specifically alleges that St. John's negligently and carelessly permitted dangerous, unsafe and hazardous conditions to exist on its property causing her physical injury. Lovell further alleges that her injuries were caused by the negligence of St. John's in that it: knew or should have known that pedestrians use its driveway as an access to the restaurant and failed to place signs or otherwise warn the plaintiff of the unsafe condition; permitted ice and/or snow to accumulate on the driveway creating a dangerous, hazardous and unsafe walk area; failed to adequately remove the accumulated ice and/or snow from the driveway to make it safe for passage; allowed the driveway to remain in an icy, slippery and dangerous condition even though it knew or should have known of its unsafe condition; improperly maintained the driveway in such a manner that it was likely to become and remain icy creating a dangerous condition; failed to lay sand or salt in the driveway to prevent it from becoming slippery and to prevent injury; allowed the driveway to remain in a dangerous condition even though it, its agents, servants, representatives and/or employees knew of the condition; failed to regularly and/or sufficiently inspect the driveway to determine its condition; failed to rope off or otherwise prohibit access to the unsafe area; and failed to exercise due care consistent with the nature of its business to guard persons using the driveway against all dangers which might reasonably and naturally be expected to arise in view of all of the existing circumstances. (See Amended Complaint, ¶ 5.)
On June 28, 1999, St. John's filed this motion for partial summary judgment as to the first count of Lovell's amended complaint. In its motion, St. John's claims that there are no issues of material fact regarding Lovell's status as a licensee and her knowledge and appreciation of the dangerous conditions which caused her injuries, and it is entitled to judgment as a matter of law. In support of its motion, St. John's filed a memorandum of law, LeBlanc's affidavit, who was pastor of the church at the time of the fall, and Lovell's responses to St. John's requests to admit. Lovell filed a memorandum of law in opposition to the motion on July 16, 1999, arguing that a genuine issue of material fact exists as to her status on St. John's property. Lovell argues she was a public invitee and St. John's breached its duty to maintain the premises in a reasonably safe condition and warn her of the dangerous condition. Lovell filed supporting certified transcripts of CT Page 5638 the depositions of LeBlanc and Kontoudakis, LeBlanc's answers to interrogatories and Lovell's affidavit.[2] In response, St. John's filed a reply memorandum in support of its motion on July 25, 1999.
 DISCUSSION
"[Summary judgment] shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Practice Book § 17-49; see also Dowling, Sr. v. Finley Associates,Inc., 248 Conn. 364, 369-70, 727 A.2d 1245 (1999); Daily v. New BritainMachine Co., 200 Conn. 562, 568, 512 A.2d 893 (1986). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Sherwood v. DanburyHospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "[T]he court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495,500, 538 A.2d 1031 (1988); see Dubinsky v. Citicorp Mortgage, Inc.,48 Conn. App. 52, 55, 708 A.2d 226, cert. denied, 244 Conn. 926, 714 A.2d 9
(1998). "A `material' fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.)Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, supra, 201.
As the party moving for summary judgment, the defendant "has the burden of showing the absence of any genuine issue of material facts . . ."; Ruddock v. Burrowes, 243 Conn. 569, 573-74,706 A.2d 967 (1998); and supporting its motion with documentation, including affidavits." See Heymen Associates No. 1 v. InsuranceCo. of Pennsylvania, 231 Conn. 756, 796,653 A.2d 122 (1995); see also Practice Book § 17-45. To defeat the motion, Lovell "must recite specific facts which contradict those stated in [St. John's] affidavits and documents." (Internal quotation marks omitted.) Connecticut NationalBank v. Great Neck Development, 215 Conn. 143, 148,574 A.2d 1298 (1990); see Hryniewicz v. Wilson,51 Conn. App. 440, 444, 722 A.2d 288 (1999). "If [Lovell's] affidavits and other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that [St. John's] has met [its] burden of proof." (Internal quotation marks omitted.)Associates Financial Services of America, Inc. v. Sorenson,46 Conn. App. 721, 732, 700 A.2d 107, cert. dismissed, 245 Conn. 168,710 A.2d 769 (1997); see Hryniewicz v. Wilson, supra, 444. CT Page 5639
First, St. John's argues that no issue of material fact exists with regard to Lovell's status as a licensee. Lovell argues that a genuine issue of material fact exists because she maintains she was a public invitee. "Ordinarily, the status of one who sustains injury while upon the property of another is a question of fact." Moonan v. ClarkWellpoint Corp., 159 Conn. 178, 185, 268 A.2d 384 (1970). Here, however, the facts essential to determining Lovell's status on the property are not in dispute; the parties merely make different legal conclusions. Therefore, a legal question is presented appropriate for determination on a motion for summary judgment. See Moonan v. Clark Wellpoint Corp., supra, 185-86, citing Roberts v. Rosenblatt, 146 Conn. 110, 112,148 A.2d 142 (1959).
Lovell's status on St. John's property at the time of the injury, be it licensee or invitee, will determine the extent of St. John's duty that was owed to Lovell. See Salaman v. City of Waterbury, 246 Conn. 298,304-05, 717 A.2d 161 (1998). "A public invitee" is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public . . .' [whereas] a business invitee `is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" (Citations omitted.) Corcoran v.Jacovino, 161 Conn. 462, 465, 290 A.2d 225 (1971). "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent. . . ." Salaman v. City of Waterbury, supra, 305. "The distinction between one who is an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as opposed to permission, from the possessor of the land to enter the land or remain on the land." Corcoran v. Jacovino, supra, 465-66. "Although an invitation in itself does not establish the status of an invitee, it is essential to it." Id., 466; see also Kolaniak v. Board ofEducation, 28 Conn. App. 277, 282, 610 A.2d 193 (1992) (adult education student invited onto school property as a member of the public for a purpose for which the land was held open was deemed a public invitee).
St. John's relies on LeBlanc's affidavit which states that neither LeBlanc nor any agent of St. John's ever invited or gave permission to Lovell to use the parking lot. (See Affidavit of LeBlanc, February 9, 1999, ¶¶ 5-8.)[3] Lovell submits no evidence to directly contradict this affidavit. Lovell relies on LeBlanc's deposition to support her argument that an "unwritten agreement" existed between St. John's and Kontoudakis which gave Pizzarama permission to use the parking lot for its patrons. (See LeBlanc Deposition, p. 14.) Lovell maintains that St. John's, by virtue of the agreement, invited the public to use its land as a parking lot and driveway, thereby making Lovell a public invitee. CT Page 5640 St. John's does not refute the existence of this agreement, as evidenced by LeBlanc's deposition, but rather its implications.
This agreement fails to show an invitation was extended to Lovell to enter or remain in the parking lot as a member of the public for a purpose for which the land is held open to the public. This interpretation of the agreement unreasonably suggests that the church opened the parking lot to the general public for purposes beyond those directly or indirectly connected with dealings with the church. The facts clearly reveal otherwise. LeBlanc stated in his deposition that, "[i]t's very much a church parking lot, but [the Pizzarama patrons] use the facility." (See LeBlanc Deposition, p. 14.) LeBlanc also posted a sign at the end of the driveway that states, "Thou Shall Not Park Here." (See LeBlanc Deposition, p. 17.) These facts are undisputed and support the conclusion that this agreement was a specific grant of permission to Kontoudakis and, in turn, permission to its patrons, to use the parking lot, not an open invitation to the general public. "Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee but it does not make him an invitee." Corcoran v. Jacovino, supra, 161 Conn. 466. Accordingly, the facts are clear that Lovell was not a public invitee of St. John's, but rather a licensee.
St. John's has met its burden of proof by providing undisputed facts essential to determining Lovell's status on the property. See Salaman v.City of Waterbury, supra, 246 Conn. 306; see generally AssociatesFinancial Services of America, Inc. v. Sorenson, supra, 46 Conn. App. 721. The fact that Lovell merely reached a different legal conclusion based on the same undisputed facts is insufficient to show the existence of a genuine issue of material fact.
Finally, St. John's argues that given Lovell's knowledge and appreciation of the dangerous condition as a licensee, St. John's was under no duty to keep the premises safe or warn of the dangerous condition. Although issues of negligence necessarily require conclusions of fact and are ordinarily not susceptible to summary adjudication, the existence of a duty is a legal conclusion and therefore an appropriate matter for summary judgment. See Michaud v. Gurney, 168 Conn. 431, 434,362 A.2d 857 (1975); Tarzia v. Great Atlantic and Pacific Tea Co.,52 Conn. App. 136, 148, 727 A.2d 219, cert. denied, 248 Conn. 920,734 A.2d 569 (1999); Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 660, 691 A.2d 1107 (1997).
Ordinarily, St. John's duty to Lovell, as a licensee, would not include a duty to keep the property in a reasonably safe condition, because a licensee must take the premises as she finds them. See Salamanv. City of Waterbury, supra, 246 Conn. 305; Morin v. Bell CourtCT Page 5641Condominium Assn., Inc., 223 Conn. 323, 327, 612 A.2d 1197 (1992). Given that St. John's actually knew that Pizzarama patrons entered the land, however, St. John's had a duty to use reasonable care both to refrain from actively subjecting patrons to danger and to warn them of the dangerous conditions of which St. John's knew, but of which St. John's could not reasonably assume that patrons knew, or by reasonable use of their faculties would observe. See Salaman v. City of Waterbury, supra, 305 ("the dangers of swimming in an unguarded body of water were such that the decedent should have, by the reasonable use of his faculties, been aware of such dangers and no such warning was necessary");Dougherty v. Graham, 161 Conn. 248, 251, 287 A.2d 382 (1971) (summary judgment granted where sledder knew of the mound of dirt and gully on defendant's property that caused his injury).
Here, St. John's had no duty to maintain the premises in a reasonably safe condition or warn Lovell of the dangerous condition because (1) it is reasonable to assume that patrons, by reasonable use of their faculties, would observe the snow and/or ice on the driveway and parking lot surfaces and (2) Lovell had actual knowledge and appreciation of the dangerous condition causing her injury. Lovell admitted that on December 29, 1995, while driving and walking on St. John's driveway and parking lot, she observed ice and snow on both surfaces. (See Plaintiff's Admissions, ¶¶ 2, 4, 6, 7, 10, 11, 12.) Lovell also admitted to walking carefully on the driveway because of the uneven ice. (See Plaintiff's Admissions, ¶ 5.) In the absence of any evidence to the contrary provided by Lovell, these admissions provide a sufficient evidentiary basis to conclude that Lovell's knowledge and appreciation of the dangerous conditions relieved St. John's of any duty to keep the premises safe or warn of such conditions. See Salaman v. City ofWaterbury, supra, 246 Conn. 305.
The motion for summary judgment is granted.
Hon. Andre M. Kocay, J.