RICHARD MACCHIETTO *v.* JOHN M. KEGGI ET AL.
(AC 26987)

Flynn, C. J., and DiPentima and Lavine, Js.

Argued April 23—officially released September 18, 2007

*Carey B. Reilly*, with whom was *Cynthia C. Bott*, for the appellant (plaintiff).

*Augustus R. Southworth III*, with whom, on the brief, was *Russell A. Green*, for the appellee (named defendant).

*Opinion*

DiPENTIMA, J. In this medical malpractice action, the plaintiff, Richard Macchietto, appeals from the judgment of the trial court setting aside the jury verdict in his favor and rendering judgment in favor of the defendant John M. Keggi.[1] The plaintiff's primary claim on appeal is that the court abused its discretion in setting aside the verdict because the evidence presented at trial was sufficient to support the jury's finding that the negligent actions of the defendant proximately caused the plaintiff's injuries. As an alternative argument, the plaintiff claims that if the court properly set aside the verdict, it then should have ordered a new trial rather than render judgment in favor of the defendant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In April, 1997, the plaintiff began treatment with the defendant for left hip pain. On May 6, 1997, the defendant performed a total hip replacement on the plaintiff at Waterbury Hospital.[2] During his recuperation, the plaintiff's hip became infected. On June 17, 1997, the defendant performed a debridement procedure to cleanse the septic hip. The plaintiff followed up with the defendant, but the plaintiff's hip was unstable, and he was experiencing pain. The plaintiff began treatment with a different orthopedic surgeon, and on May 18, 1999, that surgeon performed a Girdlestone procedure, which removed all of the components of the hip replacement. Following the Girdlestone procedure, the plaintiff's left leg was almost two inches shorter

---

[1] Waterbury Hospital and Orthopaedic Surgery, P.C., also were named as defendants. Thereafter, the action was withdrawn as to them. Accordingly, in this opinion we refer solely to Keggi as the defendant.

[2] That surgery involves placing a prosthetic cup inside the hip socket, the acetabulum, and placing a prosthetic ball on the end of the femur, which fits inside the cup.

than his right leg. At the time of trial, the plaintiff continued to be unable to walk without a walker and experienced pain with any movement.

In June, 1999, the plaintiff brought this action for medical malpractice against the defendant, alleging, inter alia, that the defendant breached the standard of care in reading, recording or reporting the plaintiff's postoperative X ray findings. The jury trial commenced on January 5, 2005. At the close of evidence, the court granted the plaintiff's motion to amend the complaint to conform to the proof and denied the defendant's motion for a directed verdict. The jury returned a verdict in favor of the plaintiff, awarding him economic and noneconomic damages totaling $100,000. There was an inconsistency between the verdict and the jury's answers to the interrogatories that had been submitted to it in that the jury returned a verdict in favor of the plaintiff but found no proximate cause. Thereafter, the court reinstructed the jury on the issue of proximate cause and on one of the interrogatories. The defendant objected to the court's failure to direct a verdict in his favor. After further deliberations, the jury amended its responses to the interrogatories and again returned with a verdict in favor of the plaintiff. According to the interrogatories, the jury found that the defendant improperly read, recorded or reported the plaintiff's postoperative X ray findings. The jury further found that those actions were the proximate cause of the plaintiff's injuries. The court accepted the amended interrogatories and the verdict.

Two weeks after the court accepted the verdict, the defendant moved to set aside the verdict, and for judgment notwithstanding the verdict and for remittitur. The plaintiff objected to that motion. The court heard argument on the postverdict motion. By its memorandum of decision, filed September 16, 2005, the court granted the defendant's motion to set aside the verdict

and for judgment notwithstanding the verdict. This appeal followed. Additional facts will be set forth as necessary.

Our standard of review concerning a motion to set aside a verdict is well settled. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 91 Conn. App. 26, 37, 879 A.2d 526, cert. granted on other grounds, 276 Conn. 916, 888 A.2d 84 (2005). As recently restated by our Supreme Court, "[a] motion to set aside the verdict should be granted if the jury reasonably and legally could not have reached the determination that [it] did in fact reach. . . . If the jury, without conjecture, could not have found a required element of the cause of action, it cannot withstand a motion to set aside the verdict." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 646, 904 A.2d 149 (2006).

Although the plaintiff presents a litany of arguments in support of his appeal, the crux of the plaintiff's primary claim is that the jury reasonably could have found that the defendant improperly read, recorded or reported postoperative X ray findings, which actions proximately caused the plaintiff's injuries. Alternatively, the plaintiff claims that even if the court properly set aside the verdict, it should have ordered a new trial rather than render judgment in favor of the defendant. Pursuant to the standard previously outlined, we first

review the law governing the plaintiff's primary claim and the evidence presented at trial to determine whether the court abused its discretion in setting aside the jury's verdict.

I

The plaintiff's primary claim is that the court abused its discretion in setting aside the jury's finding that the defendant's improper reading, recording or reporting the plaintiff's postoperative X ray findings proximately caused the plaintiff's injuries. We are not persuaded.

In setting aside the jury's verdict and rendering judgment in favor of the defendant, the court ruled that there was "absolutely no testimony concerning the necessity to remove the prosthesis or restrain the plaintiff from weight bearing until after the postoperative X rays were taken.[3] There is no evidence to support the jury's finding that the defendant's breach of the standard of care of reading, recording and reporting the postoperative X rays was a proximate cause of the plaintiff's injuries." Although the plaintiff represents that the court granted the defendant's postverdict motion solely on the basis of the first half of that ruling, we consider the court's ruling as a whole and do not isolate individual parts as suggested by the plaintiff.

"[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, the plaintiff

---

[3] According to the plaintiff's amended complaint, he made two additional claims of postoperative negligence in addition to the defendant's reading, recording and reporting of the plaintiff's postoperative X ray findings: first, that the defendant allowed the plaintiff to weight bear following the ischial fracture, and second, that the defendant failed to remove the prosthesis on June 17, 1997, after the infection. Logically, those two claims flow from the alleged improper reading of the X rays.

must present expert testimony in support of a medical malpractice claim because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital,* supra, 279 Conn. 656; *Boone* v. *William W. Backus Hospital,* 272 Conn. 551, 567, 864 A.2d 1 (2005). "The test for cause in fact is [w]ould the injury have occurred were it not for [the defendant's] negligent . . . conduct . . . ? Proximate cause is defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital,* supra, 656. As we have stated previously, "[i]n Connecticut, both breach of the standard of care *and proximate cause must be proved by expert testimony.*" (Emphasis added.) *Campbell* v. *Pommier,* 5 Conn. App. 29, 32, 496 A.2d 975 (1985); see also *Grody* v. *Tulin,* 170 Conn. 443, 449, 365 A.2d 1076 (1976).

It was incumbent on the plaintiff to prove not only that the defendant's actions breached the standard of care but also that those actions were the proximate cause of the plaintiff's injuries. Although the plaintiff had two experts, Stephen Woolson, a board certified orthopedic surgeon, and Allen Elster, a board certified radiologist, who both testified as to the defendant's breach of the standard of care with respect to the reading, recording and reporting of the plaintiff's postoperative X rays, neither Woolson nor Elster testified as to whether that breach was the proximate cause of the plaintiff's injuries. Although we acknowledge that an expert opinion need not walk us through the precise language of causation, there must be more than mere

speculation or conjecture.[4] *State* v. *Nunes*, 260 Conn. 649, 672–73, 800 A.2d 1160 (2002); *Struckman* v. *Burns*, 205 Conn. 542, 554–55, 534 A.2d 888 (1987). "To be reasonably probable, a conclusion must be more likely than not. . . . Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." (Citation omitted.) *Struckman* v. *Burns*, supra, 555; see, e.g., *State* v. *Weinberg*, 215 Conn. 231, 245, 575 A.2d 1003 ("[a]n expert witness is competent to express an opinion, even though he or she may be unwilling to state a conclusion with absolute certainty, so long as the expert's opinion, if not stated in terms of the certain, is at least stated in terms of the probable, and not merely the possible" [internal quotation marks omitted]), cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *Aspiazu* v. *Orgera*, 205 Conn. 623, 632–33, 535 A.2d 338 (1987) ("[w]hile we do not believe that it is mandatory to use talismanic words or the particular combination of magical words represented by the phrase reasonable degree of medical certainty [or probability] . . . there is no question that, to be entitled to damages, a plaintiff must establish the necessary causal relationship between the injury and the physical or mental condition that he claims resulted from it" [citation omitted; internal quotation marks omitted]).

After thoroughly reviewing the record and closely examining the entire substance of both Woolson's and

---

[4] As perhaps best articulated by the United States Supreme Court almost one century ago, we continue to reject the proposition that certain formulaic words are essential when an expert renders an opinion. "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne* v. *Eisner*, 245 U.S. 418, 425, 38 S. Ct. 158, 62 L. Ed. 372 (1918).

Elster's testimony, we agree with the court that there was no evidence that the reading, recording and reporting of the postoperative X rays was a proximate cause of the plaintiff's injuries. Although the jury was most certainly presented with evidence that reasonably could have supported its determination that the defendant breached the standard of care with respect to the plaintiff's postoperative X rays, there was no evidence, let alone expert testimony, that the breach was the cause in fact of the plaintiff's injuries. Without such a showing, the verdict in favor of the plaintiff could not stand. See *Grody* v. *Tulin*, supra, 170 Conn. 451. After reviewing the evidence and the law governing the plaintiff's medical malpractice claim, we conclude that the court did not abuse its discretion in setting aside the jury's verdict thereon. Whether the court's action in then rendering judgment in favor of the defendant was proper is the next step in our analysis.

## II

The plaintiff claims that if the court properly set aside the verdict, it should have then ordered a new trial rather than render judgment in favor of the defendant. The plaintiff posits the following arguments in support of that claim: (1) the defendant's motion for a directed verdict was untimely and his postverdict motion did not adequately notify the court of the issues raised; and (2) the jury was confused by the court's instructions. We are not persuaded.

As stated previously, our standard of review is abuse of discretion. *Kramer* v. *Petisi*, supra, 91 Conn. App. 37. "The rules of practice establish a procedure pursuant to which a motion for a directed verdict, if denied, is considered *renewed* by the motion for judgment notwithstanding the verdict." (Emphasis in original.) *Salaman* v. *Waterbury*, 246 Conn. 298, 309, 717 A.2d 161 (1998); Practice Book § 16-37; see also 2 E. Stephenson,

Connecticut Civil Procedure (2d Ed. 1970) § 203, p. 823. Practice Book § 16-37 provides in relevant part: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . . After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict . . . . If a verdict was returned the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. . . ." As has often been stated, "[a] motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict. Practice Book § 321 [now § 16-37] . . . ." (Citation omitted.) *Frankovitch* v. *Burton*, 185 Conn. 14, 15 n.2, 440 A.2d 254 (1981); *Cruz* v. *Drezek*, 175 Conn. 230, 232, 397 A.2d 1335 (1978).[5] As provided for in Practice Book § 16-37, the motion for judgment notwithstanding the verdict merely allows the court

---

[5] As we previously have discussed, "our Supreme Court has indicated that the trial court possesses inherent power to set aside a jury verdict that, in the court's opinion, is against the law or the evidence. *Palomba* v. *Gray*, 208 Conn. 21, 23–24, 543 A.2d 1331 (1988); *O'Brien* v. *Seyer*, 183 Conn. 199, 208, 439 A.2d 292 (1981). That inherent power to set aside a jury verdict may be exercised without the filing of a motion for a directed verdict. *State* v. *Avcollie*, 178 Conn. 450, 455, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *Belchak* v. *New York, N. H. & H. R. Co.*, 119 Conn. 630, 637, 179 A. 95 (1935)." *Salaman* v. *Waterbury*, 44 Conn. App. 211, 216–17, 687 A.2d 1318 (1997), rev'd on other grounds, 246 Conn. 298, 717 A.2d 161 (1998). We also note, however, that the court's inherent power does not extend to rendering judgment in the absence of a motion requesting such an action.

to make a "later determination of the legal questions raised" by the earlier motion for a directed verdict. The issues raised in the motion for judgment notwithstanding the verdict, therefore, logically must be made on the same grounds as the motion for a directed verdict. Moreover, "[t]he purpose of the motion for directed verdict with respect to the motions to set aside and for judgment notwithstanding the verdict is to give notice to the trial court." *Salaman* v. *Waterbury*, supra, 246 Conn. 309. As the present case involves a motion to set aside the verdict made in conjunction with a motion for judgment notwithstanding the verdict, on the basis of the same grounds, we will treat the two motions as one for purposes of our resolution of the plaintiff's alternative claim.

A

Notice

The plaintiff asserts that the defendant did not move for a directed verdict until after the parties' closing arguments, which he argues is too late. In addition, the plaintiff asserts that the defendant's postverdict motion was made on grounds not presented in the defendant's motion for a directed verdict. On the basis of those two alleged improper actions, the plaintiff claims that the court was denied notice of the claims made in the defendant's postverdict motion.

Our review of the record reveals that immediately prior to closing arguments, counsel and the court had a discussion at sidebar. Following closing arguments, the defendant's counsel addressed the court and stated that he wanted to "renew the motion for directed verdict that was discussed at sidebar that [he] did not argue at that time." The court allowed the defendant to renew that motion, and the defendant then argued, inter alia, that the expert testimony presented by Woolson with respect to causation was "deficient" and that Woolson

had "no basis for that [opinion], whatsoever, not even his own personal experience." The court denied the defendant's motion. Following the jury verdict, the defendant moved for judgment notwithstanding the verdict. In that motion, the defendant argued more precisely that there was no evidence presented that his actions with respect to the postoperative X rays were the proximate cause of the injuries.

We first note that although, generally, a motion for a directed verdict should be made prior to closing arguments; *Haag* v. *Beard Sand & Gravel Co.*, 151 Conn. 125, 127, 193 A.2d 711 (1963); we have recognized exceptions to that timing requirement for good cause, as long as the record supports the court's reasons for the exception. See id. In the present case, the defendant discussed the motion for a directed verdict at the close of evidence at sidebar and then renewed the motion immediately following closing arguments.[6] We are satisfied that the record supports the court's decision to allow the defendant to renew his motion for a directed verdict after making the motion earlier at sidebar.

With respect to the plaintiff's claim that the defendant's postverdict motion was based on factual and legal grounds different from those set forth in the motion for a directed verdict that was denied, we are equally unpersuaded. Fairly viewed, the postverdict motion was sufficiently in accord with the motion for a directed verdict. It is evident that the motion for a directed verdict alerted the court and the plaintiff that the claim was one of insufficiency of the evidence, i.e., that there was no evidence to prove that any of the defendant's actions were the proximate cause of the plaintiff's injuries. See, e.g., *Salaman* v. *Waterbury*,

---

[6] The defendant's counsel addressed the court as follows: "I did want to renew the motion for directed verdict that was discussed at sidebar that we did not argue at the time. If I may do that now, I'd appreciate it." The court allowed the defendant to renew his motion for a directed verdict.

supra, 246 Conn. 309–10; *Bauer* v. *Pounds,* 61 Conn. App. 29, 34–35, 762 A.2d 499 (2000). Included as the basis of the motion for a directed verdict and the posttrial motion was that there was no evidence proving proximate cause.[7] We conclude, therefore, that the court was given ample notice of the claims made in the defendant's postverdict motion.

## B

### Interrogatories

The plaintiff argues that because the court had to reinstruct the jury with respect to its answers to interrogatories, the jury obviously was confused by the initial charge and that, therefore, a new trial should have been ordered. We are not persuaded.

After the court gave its initial instruction to the jury, it provided interrogatories and verdict forms to be completed by the jury following its deliberations.[8] The first interrogatory concerned whether the jury found that the defendant breached the standard of care of an orthopedic surgeon. If the jury answered yes, it was then to proceed to the second interrogatory, which instructed the jury to indicate which of the nine allegations of a breach of the standard of care the plaintiff had proven.[9]

[7] The record shows that the court recalled that the defendant's earlier motion for a directed verdict had addressed the issue of proximate cause.

[8] Included in the court's charge was the following relevant instruction: "Under our law, it is not necessary for the plaintiff to prove all of his allegations against the defendant. The plaintiff must prove by a fair preponderance of the evidence at least one of his allegations of negligence. Thus, it is sufficient to establish the defendant's liability if you find that one or more of the acts or omissions as alleged by [the plaintiff] against [the defendant] was proved by the plaintiff to be a legal cause of the injury [the plaintiff] sustained.

"If you do not find that the plaintiff has proved at least one of the allegations of negligence and that that negligence was a proximate cause of the plaintiff's injuries, then you would find in favor of the defendant."

[9] The second interrogatory instructed the jury to indicate which of the nine separate breaches as alleged by the plaintiff in his amended complaint were proven. Those alleged breaches included the following three allegations concerning postoperative care: "(2) . . . (g) Did you find that [the defen-

The third interrogatory instructed the jury to indicate whether any of the selected breaches in the second interrogatory were a proximate cause of the plaintiff's injuries.

The jury returned a verdict in favor of the plaintiff and indicated on the interrogatories that the defendant breached the standard of care by improperly reading, recording or reporting the plaintiff's postoperative X ray findings. Although the jury also indicated that it did not find that the defendant's breach proximately caused the plaintiff's injuries, it proceeded to award damages to the plaintiff. Taking note of this inconsistency, the court returned the jury for further deliberations with instructions to reconsider whether the defendant's actions were the proximate cause of the plaintiff's injuries. The jury again returned with a verdict in favor of the plaintiff, but this time it indicated on the interrogatories that the defendant's actions were the proximate cause of the plaintiff's injuries. That was the only change between the jury's initial and subsequent verdicts and supporting interrogatories. The jury did not find that the defendant's conduct breached the standard of care in any other respect.

The plaintiff suggests that that chain of events shows such confusion on the part of the jury as to justify the need for a new trial. Although the jury's initial verdict did not conform to its interrogatories, the jury was reinstructed by the court, and the jury corrected the inconsistency. The level of confusion demonstrated by the jury in the present case does not justify a new trial on that basis alone. Cf. *Robbins* v. *Van Gilder*, 225 Conn. 238, 253, 622 A.2d 555 (1993) (mistrial declared

dant] improperly read, recorded or reported post operative X ray findings? . . . (h) Did you find that [the defendant] improperly treated [the plaintiff's] hip on or about June 17, 1997 by failing to remove the prosthesis at that time? . . . (i) Did you find that [the defendant] improperly allowed [the plaintiff] to weight bear following the ischial fracture?"

where "hopeless confusion, rendering the jury unable to return a verdict and answers that were consistent with each other despite the court's repeated instructions").

The plaintiff also suggests that the court's instructions added to the jury confusion and were harmful. We note that the plaintiff did not provide a request to charge or object to the charge as given. It is only now, faced with the ultimate disappointing result, that the plaintiff argues that the instruction added to the jury's confusion. Specifically, the plaintiff now claims that the court should not have included the allegation of negligence with respect to the postoperative X rays.[10] Regardless of whether the court presented the jury with the negligence allegation with respect to the X rays, the jury was not limited to choosing only one of the alleged acts of negligence as presented on the interrogatory. The jury was not restricted in any way from finding that the plaintiff had proven any of the other eight allegations of negligence as stated on the interrogatory. It simply did not find that the plaintiff had proven those alleged acts. The plaintiff suggests that the jury would have chosen one of the other eight allegations if the X ray allegation had been withheld. We cannot speculate, as the plaintiff would have us do, as to how and why the jury arrived at its verdict or what it may or may

[10] In support of his argument, the plaintiff draws our attention to the court's statement in its September 16, 2005 memorandum of decision concerning its instructions. The court stated that "[t]he problem with the court's instruction was that, in the case of the allegation concerning X rays, proof of that allegation alone was not sufficient because there was no evidence that misreading the X rays, without the consequent failures indicated in interrogatories 2 (h) and 2 (i), was a substantial factor in causing the plaintiff's injuries." The court's statement does not advance the argument made by the plaintiff, as the court merely was commenting on the lack of evidence to support the plaintiff's postoperative care allegations, which, as stated previously, logically flowed from the allegation concerning X rays. See footnotes 3 and 8.

not have done differently. See *Tisdale* v. *Riverside Cemetery Assn.*, 78 Conn. App. 250, 263, 826 A.2d 232, cert. denied, 266 Conn. 909, 823 A.2d 74 (2003). If the plaintiff doubted the validity of the court's instructions, the proper time to have expressed that doubt would have been after the charge was given. On the basis of the facts of the present case, we are satisfied that the motion for judgment notwithstanding the verdict was granted properly and that judgment properly was rendered in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.