### HENRY C. STEVENS *vs.* WILLIAM W. GIDDINGS.

The plaintiff offered a city lot for sale at auction, stating in handbills and at the time of the sale that the depth was one hundred feet. The lot was a part of a tract pertaining to a mansion house, and the house, which was situated in part on the lot, was to go with it in the sale, and to be so changed in position as to stand wholly on the lot. The defendant bid off the lot without measuring it, and relying upon these representations. The depth was in fact but ninety-five and a half feet, and the difference materially affected its value, especially in the use of it as the site for the house. The defendant four days after the sale informed the plaintiff that he could not accept the lot on account of the deficiency in quantity. *Held*, in an action brought for the price, that the defendant had a right to rescind the contract.

ASSUMPSIT to recover the price of certain real estate purchased by the defendant at an auction sale, brought to the Superior Court in Hartford County. The defendant pleaded the general issue, with notice that he would show that the purchase of the property was made upon false representations of the plaintiff at the sale that the quantity of land was greater than it was in fact. The case was tried to the court before *Martin, J.*

Upon the trial it appeared that prior to the sale the plaintiff had posted handbills conspicuously about the city of New Britain, within which the property, which consisted of a mansion house and extensive grounds about it, was situated, describing it, and stating as follows:

" This charming estate will be offered at public auction on the premises, on Tuesday, July 2, 1872, at 2 P. M., in five lots, severally, as follows:

"Lot No. 1—35×75, with Gothic stable and carriage house, at small cost convertible into tasteful house.

" Lot No. 2—37½×100, and offset 25×35, with green-house and fixtures.

"Lot No. 3—52½×100, and whole of mansion house therewith, which moved a few feet and cellar made makes this lot a *residence complete;* or dividing mansion, can make *two* separate houses, each house 32×32.

"Lot No. 4—50×90, fronting Main street, shade, etc.

" Lot No. 5—50×90, corner Main and Pearl streets, fountain, etc."

The handbill also stated that other terms and particulars would be made known at the time of the sale.  Also that ten per cent. was to be paid down at the sale.

Circulars containing the same description of the property and the same statements were also printed and distributed.

The sale took place on the 2d of July, 1872.  Immediately before the sale the plaintiff in the presence of the auctioneer and bystanders read aloud a written notice, of which the following is a part:—

" The whole land, as deeded to Mr. Stephens, measures one hundred feet on Main street and same on rear by land of H. Stanley, two hundred and fifteen feet on Pearl street, and same on grounds of H. Stanley, and can thus be cut up as lots, namely, fifty feet front to each of two lots fronting on Main street, and thirty-five feet, respectively, for fronts on Pearl street.  The marks by red flags set at points to show about where corners of lots would come."

The defendant bid off lot No. 3 for $8,550.

The property offered for sale was situated on the corner of South Main and Pearl streets, in the city of New Britain; Pearl street being upon the south, and South Main street upon the west of the premises.  A cedar hedge, three or four feet high, ran along about two-thirds of the north line, and the wall of the green-house on the premises extended along the remainder of the north line, and the hedge and wall were plainly visible at the time of the sale.

Red flags were placed near each corner of the respective lots as each lot was sold, though not exactly at the corners, and about where the lines between the lots would run.  Lot No. 3 was ninety-five and a half feet deep, but the plaintiff had never measured it, and supposed it to be a hundred feet deep.  The deed by which he acquired his title described the whole of the tract as one hundred feet deep on South Main street.  The deed was at the time of sale, and had been for many years prior thereto, on record in the office of the town clerk.  The defendant had resided in New Britain many

Stevens *v.* Giddings.

years, had often seen the premises, and was about the premises at the time the writing was read by the plaintiff, but did not hear the same, or know of the contents thereof at the time he made his bid.

The lot bid in by the defendant was put up for sale in connection with the dwelling-house described in the circular as the mansion house, and which was then standing mostly on this lot, and partly on two other lots, as the property was divided by the plaintiff's sale. To use the house upon lot No. 3, it was necessary to turn it about, changing its front from Main street on the west to Pearl street on the south, and the design of all parties was that the lot should be thus used for the location of the house, and the land was more valuable on that account. The house was seventy-seven feet long.

The auctioneer, when he put up the lot and house, represented the lot as one hundred feet in depth, and made no reference to any other guide to its depth; there was nothing to indicate the rear boundary excepting the hedge, flags, and green-house wall.

The defendant relied upon the statements of the auctioneer and of the circular, and he was influenced in his bid by the representations of the auctioneer. The depth of the lot was a, material element in its value.

The plaintiff, after the sale, tendered to the defendant a warrantee deed of the lot, describing it as one hundred feet deep, but the defendant refused to accept the deed, giving as a reason that the land was deficient in quantity. The defendant first made known his unwillingness to take the lot four days after the sale, and has at all times since then refused to accept a deed, and has never paid the plaintiff anything. The plaintiff has suffered damages in consequence of the defendant's not carrying out the alleged contract of sale, and was subjected to great inconvenience and expense thereby, but the court did not upon the hearing estimate the amount of damages, as in the view taken of the case such estimate was not necessary.

Upon the trial the plaintiff claimed and asked the court to rule that the fact that the depth of the lot was less than one

hundred feet, should not, as a matter of law upon the facts. found, prevent the plaintiff from sustaining his action, but the court ruled otherwise, and held that the deficiency constituted a full defense to the action. The plaintiff also claimed, and asked the court to rule, that the plaintiff was entitled to recover ten per cent. of the price of the lot, whether or not the quantity of land was deficient, provided the plaintiff had established a sufficient memorandum of the sale; but the court did not so rule, but held that the sum of ten per cent. was not recoverable.

The court having rendered judgment for the defendant, the plaintiff moved for a new trial for error in the above rulings of the court.

*C. E. Mitchell* and *F. L. Hungerford,* in support of the motion.

The deficiency in the quantity of the land constitutes no defence to the action.

1. The defendant had every opportunity for verifying the statements of the circular and the auctioneer, saw clearly the boundaries of the lot he was purchasing, was tendered a deed: of the identical thing he purchased for the gross sum of $8,550, and the plaintiff acted in the utmost good faith. Under these circumstances it is clear that the defendant cannot now complain. *Sherwood* v. *Salmon,* 5 Day, 438, 446; *Gordon* v. *Parmelee,* 2 Allen, 212. In the latter case the court say: "The defendants had the means of ascertaining the precise quantity of land included within the boundaries. They omitted to measure it or to cause it to be surveyed. By the use of ordinary vigilance and attention they might have ascertained that the statement concerning the number of acres, on which they placed reliance, was false. They cannot now seek a remedy for placing confidence in affirmations which, at the time they were made, they had the means and the opportunity to verify or disprove." *Noble* v. *Googins,* 99 Mass., 231; *Mooney* v. *Miller,* 102 id., 217, 220.

2. But it further appears from the finding that the posters and circulars stated that additional particulars would be made

Stevens *v.* Giddings.

known at the time of sale; these particulars were made known, and it was then stated that the whole land was one hundred feet deep *as deeded* to the plaintiff. The defendant is bound by these statements, whether he heard them or not. *Thompson* v. *Kelly*, 101 Mass., 291, 297. Finally, if the deficiency in the quantity of land was a defence to the recovery of damages in this action, it was no defense to the recovery of ten per cent. of the contract price. *Bean* v. *Atwater*, 4 Conn., 3, 10.

*C. E. Perkins* and *H. C. Robinson*, contra.

The misrepresentation with regard to the depth of the lot was so material that it justified a rescission of the contract by the purchaser. It is to be noticed that it was not a sale of pasture land by the acre, and that there was not the provision usually inserted at sales of land by auction in English contracts, that errors in the description shall not avoid the sale, but be allowed for in the price. It was a sale of a "Mansion House," with a lot sufficient to give it ample surroundings. After deducting from the hundred feet the seventy-seven feet actually occupied by it, and a reasonable space from the street line, say ten feet, there would be but thirteen feet left. Now when this back yard is cut down to eight and a half feet, it is crippling the purchase at a material point. A case very similar to the one at bar arose in England, and where the ordinary stipulation of their sales, which they call a "compensation clause" was in the contract, and yet the court held that the purchaser did right to rescind the contract. *Dobell* v. *Hutchinson*, 3 Adol. & El., 355. A very late case in England sustains the proposition which we are now arguing. *Earl of Durham* v. *Legard*, 34 Beav., 611. See also *Gibson* v. *D'Este*, 2 Younge & Coll., 542. In the midst of very conflicting authorities in England as to when a misdescription of premises is a ground for compensation only, and when for rescission, where there is a compensation clause in the contract, we submit that the language of Tindal, C. J., in *Flight* v. *Booth*, 1 Bing. N. C., 377, and approved by all the best modern text writers, as 1 Parsons on

Contracts, 494, and Atkinson on Sales, 278, is the true one: "It is a safe rule to adopt, that when the misdescription, although not proceeding from fraud, is in a material and substantial point, so far affecting the subject matter of the contract that it may reasonably be supposed that but for such misdescription the purchaser might never have entered into the contract at all; in such case the contract is avoided altogether, and the purchaser is not bound to resort to the clause of compensation. Under such a state of facts the purchaser may be considered as not having purchased the thing which was really the subject of sale." There is, of course, no compensation clause in this contract, but even if there were, we submit that the finding of the court as to the materiality of full depth for the purposes for which the lot was bought, would bring the case within the English rule. How much stronger the case when there is no stipulation that an abatement of price should be the only mode of correcting errors in description. Our own court, in a very recent case, *Church* v. *Steele*, 42 Conn., 69, has affirmed the materiality of an unintentional misdescription of the measurement of a city lot sold for general purposes.

PARK, C. J. The controlling fact in this case is, that there was a material deficiency in the quantity of land sold. The plaintiff's circular represented the lot to be one hundred feet in depth. The auctioneer proclaimed at the sale that the lot was of that depth. The lot was in fact but ninety-five and one half feet deep. That part of the finding important in this respect is as follows: "The defendant had not measured the lot, and had no knowledge of its depth, but relied upon the statements of the auctioneer and of the circular, and he was influenced in his bid by the representations of the auctioneer. The depth of the lot was a material element in its value." The importance of the deficiency of the land sold will appear when it is considered that it was sold with a dwelling-house which was seventy-seven feet in length. The sale of the other tracts of land rendered it necessary to change the location of the house, so that the length of the

house would be on a line with the depth of the lot. Hence, when the house has been placed in its new position, there will be less than ten feet space left unoccupied at each end of the house.

We think the finding of the court upon this subject is decisive of the case. The defendant was not bound to accept a lot in the circumstances of this case, which was but ninety-five and one-half feet in depth, for one of one hundred feet in depth, when the court has found that the depth of the lot was a material element in its value.

But it is said that the defendant had the opportunity to measure the depth of the lot before purchasing, and that therefore the fault was his own. It would be altogether unusual for a purchaser to measure the depth of a lot after the seller by his circular had represented it to be of a certain depth, and his agent the auctioneer had positively asserted at the time of the sale that it was of that depth. It would be far more reasonable to hold the plaintiff bound by his acts and declarations under the circumstances, than to hold the defendant bound by his omission to make the measurement. We think the defendant had the right to rely on the representations of the plaintiff and on the declarations of the auctioneer.

We do not advise a new trial.

In this opinion the other judges concurred, except Loomis, J., who did not sit.