JENNE MAAG *v.* HOMECHEK REAL ESTATE
SERVICES, INC., ET AL.
(AC 23285)
(AC 23286)

Foti, Dranginis and McLachlan, Js.

Argued December 1, 2003—officially released March 30, 2004

*Donald A. Mitchell,* for the appellant-appellee (named defendant).

*Zbigniew S. Rozbicki,* for the appellant-appellee (plaintiff).

*D. Randall DiBella,* for the appellee (Ernest Belmont).

*Opinion*

FOTI, J. The plaintiff, Jenne Maag, brought the underlying action, sounding in negligence, against the defen-

dants, Homechek Real Estate Services, Inc. (Homechek), and Ernest Belmont. The plaintiff and Homechek, appealing separately, challenge the judgment of the trial court, rendered after a jury verdict, against Homechek and in favor of Belmont. The plaintiff claims that the court improperly denied (1) her motion to set aside the verdict and to render judgment in her favor against Belmont, and (2) her motion to compel the jury to reconsider its verdict. Homechek claims that the court improperly (1) denied its motion to set aside the verdict in light of the jury's answers to the court's interrogatories and (2) denied its motion to set aside the verdict when there was insufficient evidence that it was directly liable for the plaintiff's damages. We agree with Homechek that the evidence did not support the verdict; accordingly, we reverse the judgment in part and remand the case with direction to render judgment for Homechek.

The jury reasonably could have found that in September, 1997, the plaintiff hired Homechek, doing business as Pro Chek, to inspect a residential property that she was interested in purchasing. Homechek was primarily engaged in the business of conducting real estate inspections. Belmont was a licensed real estate inspector in Homechek's employ and, acting as Homechek's agent, inspected the property and prepared a handwritten inspection report that Homechek later issued to the plaintiff in typewritten form. Relying, in part, on that written report, the plaintiff purchased the property.

The plaintiff later learned that a stone retaining wall approximately 120 feet long and located in close proximity to the rear of her new home was deteriorating and in danger of collapsing. The stone wall was integral to a stone terrace at the rear of the property, the home's foundation, the home's immediate grounds and the landscaping. The report did not disclose the wall's defects. To the contrary, Belmont did not inspect the

retaining wall, but noted in his report that the retaining walls on the premises were in an "acceptable" condition.

The plaintiff, alleging that the defendants' negligence caused her financial detriment, brought the underlying action. By way of interrogatories, the jury found that both Homechek and Belmont were negligent in the performance of the home inspection for the plaintiff. The jury attributed 100 percent of the negligence to Homechek and awarded the plaintiff $65,480.[1] The court

[1] Absent objection, the court submitted both sets of interrogatories and verdict forms for both defendants to the jury. The interrogatories and the jury's responses thereto were as follows:

"JURY INTERROGATORIES

"1. Was Defendant, BELMONT, an agent of Defendant, [HOMECHEK]?
"Yes __X__ No _____

"2. Was Defendant BELMONT an independent contractor?
"Yes _____ No __X__

"3. Was Defendant, HOMECHEK, negligent in the performance of the house inspection for Plaintiff JENNE MAAG?
"Yes __X__ No _____

"If the answer to this interrogatory is no, then you should complete the [HOMECHEK] Defendant's verdict form and proceed to interrogatory #5.

"4. If the above answer to interrogatory #3 is Yes, what percent of negligence is attributable to Defendant [HOMECHEK]?
" 100 

"5. Was Defendant, BELMONT, negligent in the performance of house inspection for Plaintiff JENNE MAAG?
"Yes __X__ No _____

"If the answer to this interrogatory is no, then you should complete the BELMONT Defendant's verdict form and proceed to interrogatory #7.

"6. If the answer to interrogatory #5 is Yes, what percent of negligence is attributable to Defendant BELMONT?
" 0% 

"If you have answered no to interrogatory #3 and no to interrogatory #5, then do not complete the other interrogatories on this form.

"7. Was Plaintiff, JENNE MAAG, negligent?
"Yes _____ No __X__

"8. If the above answer to interrogatory #7 is Yes, what percent of negligence is attributable to Plaintiff JEANNE MAAG?
" % 

"9. Did the Defendants, [HOMECHEK] and BELMONT, or either one of them, cause the Plaintiff, JENNE MAAG, any damages?
"Yes __X__ No _____

denied various postverdict motions that were submitted by the parties, and these appeals followed.

# I

## THE PLAINTIFF'S APPEAL

The record reflects the following undisputed facts. After the jury reported that it had reached a verdict, the court assembled the jury in the courtroom. The court reviewed the jury's answers to the interrogatories and the completed verdict form. The clerk then read aloud both of those documents, and the jury agreed to its verdict. The court stated that the verdict "is accepted and ordered recorded." The clerk again read aloud the completed interrogatories and the verdict for a second time. The clerk inquired of the jury if it was its verdict; the jury responded that it was.

Immediately thereafter, the plaintiff's attorney addressed the court outside of the presence of the jury.

"10. What was the total amount, in dollars, of the damages incurred by Plaintiff, JENNE MAAG
  "$65,480.00"
The jury's verdict form, completed by the foreperson, states in relevant part:
  "PLAINTIFF'S VERDICT FORM
  "SECTION ONE: PERCENT OF NEGLIGENCE
  "We find for the plaintiff, JENNE MAAG, and against the defendants, [HOMECHEK] REAL ESTATE INC. D/B/A PRO CHECK and ERNEST BELMONT, as follows:
  "The percentage of negligence, as defined by the court, of defendant [HOMECHEK] REAL ESTATE SERVICES, INC. D/B/A PRO CHECK as set forth in response to Jury Interrogatory number 4 is 100%.
  "The percentage of negligence, as defined by the court, of defendant, ERNEST BELMONT as set forth in response to Jury Interrogatory number 6 is 0%.
  "The percentage of negligence, as defined by the court, of plaintiff, JENNE MAAG, as set forth in response to Jury Interrogatory number 8 is 0%.
  "NOTE: THE TOTAL NEGLIGENCE MUST EQUAL 100%
  "SECTION TWO: FINDINGS OF DAMAGES
  "The amount of damages as set forth in Jury Interrogatory number 10 is $65,480.00"

The plaintiff's attorney argued that "the verdict in favor of [Belmont] is inconsistent with the answer to the interrogatories." The court responded that it had noticed "some question" with regard to the verdict, but that it had accepted the verdict and ordered that it be recorded. The court stated that the plaintiff's attorney could raise any objections to the verdict by way of postjudgment motions. The plaintiff's attorney then stated that the court could accept and order that a verdict be recorded only after it has been read twice. The plaintiff's attorney argued that the court had accepted and ordered that the verdict be recorded after it had been read once, and asked that the court order the jury to reconsider its verdict. The court denied the request, stating that "once the verdict is accepted and ordered recorded, it is done." The court then returned the members of the jury to the courtroom, thanked them for their service and discharged them.

The plaintiff thereafter filed a pleading titled "Motion to Set Aside the General Verdict and Judgment Entered Thereon for the Defendant Belmont and Motion for Entry of Judgment for the Plaintiff Based on the Answers to the Court's Interrogatories," and a pleading titled "Plaintiff's Motion to Set Aside Verdict and Judgment for the Defendant Belmont and Motion N. O. V." The court denied those motions.[2] The plaintiff argued in those motions, as she does on appeal, that the jury's answers to the court's interrogatories contradicted the verdict.

## A

The plaintiff first claims that the court improperly denied her motion to render judgment consistent with the jury's answers to the court's interrogatories. We disagree.

[2] The court denied the motions, as well as Homechek's postverdict motions, without issuing an oral or written decision.

"The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited. . . . To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must negate every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial. . . .

"It is not the function of the court to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Citations omitted; internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 269–70, 698 A.2d 838 (1997).

The plaintiff claims that the jury's verdict was improper because the jury found that both Homechek and Belmont were negligent, yet attributed 100 percent of the negligence to Homechek. The plaintiff argues: "Since a corporation can only act through its agents and Belmont was the only agent who performed the services which the jury found to be negligent, the pleadings, the court's charges, the verdict against Homechek and the jury's answers to the court's interrogatories compelled the court, as a matter of law, to apply the law to the facts found by the jury in their answers to

the court's interrogatories and to enter judgment for the plaintiff on the basis of said interrogatories." The plaintiff posits that the jury's allocation of negligence was "of no consequence" and that, as a matter of law, the verdict against Homechek applied to Belmont. The plaintiff asks this court to set aside the verdict in Belmont's favor and to remand the case to the trial court with direction to render judgment against Belmont as a joint tortfeasor in the amount of $65,480.

In her complaint, the plaintiff alleged that the defendants were negligent in that the "inspection negligently failed to disclose" the defective condition on her property, that "[t]he defendants were negligent in conducting their inspection and in the preparation of their report" and that "[t]he defendants were also negligent in failing to alert the plaintiff to the potential cost and extent of the repairs of said wall and its consequences . . . ." The defendants denied those allegations. The plaintiff also alleged: "The defendant Pro Chek negligently failed to supervise, instruct and oversee the defendant Belmont and to set adequate standards in the performance of his inspection duties." Homechek denied that allegation, which the plaintiff directed only to Homechek.

We conclude that the general verdict rendered solely against Homechek was not inconsistent with the jury's answers to the interrogatories. The plaintiff presumes that the jury could not have found that Homechek was directly liable for the plaintiff's injuries, and the plaintiff relies heavily on the well settled legal principle that "when a plaintiff brings a claim against a principal based solely upon the tortious conduct of the agent, the plaintiff cannot recover any more compensatory damages from the principal than it could from the agent." (Internal quotation marks omitted.) *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 722, 735 A.2d 306 (1999).

Here, however, the plaintiff specifically claimed that Homechek was liable, apart from Belmont's negligence, because of its own failures in supervising, overseeing and instructing Belmont, and in its failures to "set adequate standards in the performance of [Belmont's] inspection duties." The plaintiff, therefore, did not bring the action against Homechek solely on the basis of Belmont's allegedly tortious conduct; she brought suit against Homechek for its own tortious conduct.

Further, the interrogatories are silent with regard to the jury's findings as to proximate cause. The jury could have found that both defendants had breached different duties of care owed to the plaintiff and that Homechek's breach of the duties it owed the plaintiff proximately had caused her damages. The interrogatories did not ask the jury to specify whether Belmont's negligence proximately caused the plaintiff any damages. "[I]f the interrogatories did not address certain issues, they are deemed to be found for the defendant and, therefore, judgment may not be rendered contrary to the general verdict." (Internal quotation marks omitted.) *Murteza* v. *State*, 7 Conn. App. 196, 202, 508 A.2d 449, cert. denied, 200 Conn. 803, 510 A.2d 191 (1986). A jury's finding that a defendant was negligent in one or more respects as alleged in a complaint does not, in and of itself, mandate a finding that such negligence proximately caused the damages complained of. Id., 204.

We conclude that the jury's answers to the court's interrogatories may be readily harmonized and that "an entirely reasonable hypothesis [concerning the jury's verdict] might be formulated within the scope of the pleadings [that is] not inconsistent with the answer[s] to the interrogatories"; *Belchak* v. *New York, N. H. & H. R. Co.*, 119 Conn. 630, 635, 179 A. 95 (1935); so as to justify the general verdict in Belmont's favor. Consequently, we conclude that the court properly denied

the plaintiff's motion to render judgment contrary to the verdict.

## B

The plaintiff next claims that the court improperly denied her motion to compel the jury to reconsider its verdict in light of the answers to the court's interrogatories. We disagree.

The court plays an essential role in supervising the jury and in ensuring that the verdict is reasonable and lawful. "The control of the court over the verdict of the jury is limited but salutary." (Internal quotation marks omitted.) *Van Nesse* v. *Tomaszewski*, 265 Conn. 627, 634, 829 A.2d 836 (2003). General Statutes § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration." Practice Book § 16-17 mirrors that rule. A decision with regard to an order for reconsideration rests within the court's sound discretion. *Cruz* v. *Drezek*, 175 Conn. 230, 242–43, 397 A.2d 1335 (1978).

The plaintiff posits that the court improperly determined that once it had accepted the verdict and ordered it recorded, it could not ask the jury to reconsider the verdict. The record suggests, however, that the court accepted the verdict because it had determined that the verdict was proper. We note that the plaintiff did not ask the court to order the jury to reconsider its verdict until after the court had accepted the verdict. "After the verdict has been announced *and before it has been accepted*, the court may refuse to accept it if it is not in proper form or otherwise imperfect, or it

may refuse to accept it for the time being and return the jury to a second and even third consideration of the case." (Emphasis added; internal quotation marks omitted.) *State* v. *Martin*, 189 Conn. 1, 4 n.1, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983).

The record reveals that the court reviewed the verdict forms, heard the jury assent to its verdict and then accepted the verdict. Practice Book § 16-31 provides: "Subject to the provisions of Section 16-17, the judicial authority shall, if the verdict is in order and is technically correct, accept it without comment." After the court accepted the verdict, the plaintiff made the motion at issue. The court denied the motion, stating that it had reviewed the verdict forms "carefully" and had determined that it should accept the verdict.

We already have determined that the verdict, on its face, was not necessarily contrary to the answers to the interrogatories. We likewise conclude, on the limited ground presented, that the court did not abuse its discretion by denying the motion to compel reconsideration of the verdict.

## II

### HOMECHEK'S APPEAL

#### A

Homechek first claims that because the jury's answers to the court's interrogatories rendered the verdict legally improper, the court improperly denied its motion to set aside the verdict. We disagree.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable pre-

sumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Arnone* v. *Enfield*, 79 Conn. App. 501, 505–506, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003).

Homechek claims that the jury, having found that Belmont was negligent and was Homechek's agent, could not attribute 100 percent of the negligence to Homechek. Homechek claims that the jury's finding that Belmont did not cause any of the plaintiff's damages absolved it "from any vicarious liability" and rendered the verdict legally improper. Homechek points out that when a plaintiff seeks recovery against a principal solely on the basis of an agent's wrongdoing, the plaintiff "cannot recover any more compensatory damages from the principal than it could from the agent." (Internal quotation marks omitted.) *Alvarez* v. *New Haven Register, Inc.*, supra, 249 Conn. 722.

We reject Homechek's claim on the same limited basis that we rejected the plaintiff's challenge to the verdict. See part I A of this opinion. Homechek's argument rests on the assumption that the verdict against it followed from a finding by the jury that Homechek was vicariously liable for Belmont's wrongdoing. As noted previously, neither the verdict nor the answers to the interrogatories indicate that the jury necessarily based its verdict on the principle of vicarious liability.

B

Homechek also claims that the court should have set aside the verdict because if the jury returned its verdict

on the ground that Homechek was directly liable to the plaintiff, the evidence did not support the verdict.[3] We agree.

"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. . . . In analyzing a sufficiency of the evidence claim, the test that we employ is whether, on the basis of the evidence before the jury, a reasonable and properly motivated jury could return the verdict that it did. . . . On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled." (Internal quotation marks omitted.) *Carusillo* v. *Associated Women's Health Specialists, P.C.*, 79 Conn. App. 649, 653, 831 A.2d 255 (2003).

We have examined all of the evidence presented at trial. There was evidence concerning Homechek's control, guidance and oversight of Belmont's inspection activities. The evidence was uncontroverted that Homechek, on receiving a request from a client to conduct an inspection, assigned the job to one of the inspectors Homechek employed. That was the case concerning the plaintiff's request to inspect the subject property. Belmont testified that Homechek had requested him to conduct his inspections according to the American Society of Home Inspection's standards

---

[3] Homechek also claims that the plaintiff failed to present any evidence concerning the applicable standard of care. We disagree. The court ruled that the plaintiff's expert, William Selski, was qualified to render expert testimony concerning the duty of care that a home inspector should follow in his professional duties. Selski testified that the "basic" standard is that a home inspector should note on his report whether he did or did not inspect a certain feature listed thereon. Next, Selski testified, the inspector had a duty to report truthfully and accurately the condition of any feature he represents to have inspected.

of practice. Belmont testified that Homechek gave him a copy of those standards and that Homechek personnel conducted biweekly seminars during which inspectors received instruction on specific aspects of their duties as home inspectors.

Belmont also testified that Homechek provided him with an "outline of what should be inspected and how." Specifically, Homechek gave its inspectors, including Belmont, a blank "inspection report" to complete during their inspections. That report required inspectors to describe features of the property and included a lengthy checklist, which described specific features of the property and required the inspectors to rate each feature that was inspected. The evidence demonstrated that Belmont submitted his completed report for the subject property, which he completed during his inspection, to Homechek and that Homechek typed his hand-written notes onto a clean copy of the report and gave the completed report to the plaintiff.

Lorri Carty, Homechek's president, testified that Homechek issued training manuals to its home inspectors. Carty testified that once Belmont had accepted the job that Homechek assigned to him, he was required to follow Homechek's procedures. Carty also testified that Homechek did not review the conduct of its inspectors in the performance of their duties.

Although there was evidence concerning the plaintiff's dealings with Homechek and Homechek's involvement with Belmont's performance of his duties, there was no evidence that Homechek proximately had caused the damages for which the plaintiff sought to recover. The plaintiff did not substantiate her claim that Homechek "negligently failed to supervise, instruct and oversee the defendant Belmont and to set adequate standards in the performance of his inspection duties." There was no evidence on which the jury reasonably

could have found that Homechek's supervision, instruction or oversight of Belmont's work, or that its standards for the performance of that work deviated in any way from the standards of the profession or that it *proximately had caused* the damages for which the plaintiff sought to recover. To recover, the plaintiff had to demonstrate that any negligent acts or omissions by Homechek were related to the report's failure to disclose the deteriorating condition of the retaining wall.

The plaintiff did not demonstrate that Homechek was negligent by asking Belmont to follow the procedures that it asked him to follow. There was no evidence that those procedures were improper or that they in any way led to the claimed inaccuracy in the report. There was no evidence that Homechek was negligent by giving Belmont any of the instructions, directions or protocols that it required him to follow. Further, there was no basis on which to find that any of Homechek's directives led to the damages complained of. To the contrary, there was uncontroverted evidence that Homechek instructed Belmont to follow industry standards that were not challenged at trial, to assess conditions that he actually observed and to indicate on his report those features of the property that, for whatever reason, he did not inspect. There was no evidence that Homechek, in any way, instructed or led Belmont to rate a feature of the property that he did not inspect or that it caused Belmont to rate the retaining wall as he did.

The evidence reflects that Homechek employees, other than Belmont, used Belmont's handwritten field report to create a typewritten version of the report that Homechek later issued to the plaintiff. The plaintiff has not demonstrated any negligence on Homechek's part in those acts and certainly has not proven that those acts led to the damages for which she sought compensation. Carty testified that Homechek did not review Belmont's conduct in the performance of his duties. The plaintiff

did not, however, demonstrate that this omission, in and of itself, breached the duty of care that Homechek, as one employing a licensed home inspector, owed to the plaintiff or, even if it had breached the standard of care, that the breach proximately caused the plaintiff's claimed damages.

We conclude that the verdict was not supported by the evidence if the jury based it on Homechek's *direct* liability to the plaintiff. The verdict was legally improper if the jury based it on *vicarious* liability because, as the parties correctly posit, Homechek could be no more liable for the plaintiff's damages than was its agent, Belmont. Accordingly, the verdict cannot stand. The court abused its discretion in refusing to set aside the verdict against Homechek, and we must direct a judgment in favor of Homechek.[4]

On the plaintiff's appeal, the judgment in favor of Belmont is affirmed. On Homechek's appeal, the judgment against Homechek is reversed and the case is remanded with direction to render judgment in Homechek's favor.

In this opinion the other judges concurred.

---

[4] Our holding with regard to the sufficiency of the evidence makes it unnecessary for us to review other claims raised by Homechek. Homechek claimed that the evidence did not support the jury's award of damages in the amount of $65,480. Homechek also claimed that the court improperly admitted into evidence certain estimates for the cost of repairing the retaining wall. Our resolution of this evidentiary claim would not affect our holding. Any error in this regard inured to the strength of the plaintiff's case, which we hold was not strong enough to support the verdict.