# MYRA J. KRAMER ET AL. *v.* ROBERT J. PETISI ET AL.
## (AC 24698)

Schaller, Flynn and Gruendel, Js.

Argued February 23—officially released August 23, 2005

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (named plaintiff).

*Robert B. Bellitto*, for the appellees (named defendant et al.).

*Laura Pascale Zaino*, with whom, on the brief, was *Thomas J. Hagarty, Jr.*, for the appellees (defendant Patricia Abagnale et al.).

*Opinion*

SCHALLER, J. The plaintiff Myra J. Kramer[1] appeals from the judgment of the trial court rendered in favor of the defendants[2] following the jury trial of a case involving the negligent or fraudulent misrepresentation of property boundary lines. On appeal, the plaintiff claims that the court improperly (1) instructed the jury on the applicability of comparative negligence and (2) refused to set aside the verdict as to the defendants Patricia Abagnale, Country Living Associates, Inc., Robert J. Petisi and Carole W. Petisi. The plaintiff asserts that the jury improperly found that she was not entitled to damages on the basis of its finding that she was negligent in relying on a 1982 survey of the property instead of obtaining a current survey before purchasing the property. We affirm the judgment of the trial court.

---

[1] Kramer's husband, Gary Kramer, a plaintiff at trial, died while this action was pending in the trial court and is not a party to this appeal. We therefore refer in this opinion to Myra Kramer as the plaintiff.

[2] At trial, the defendants were Robert J. Petisi, Carole W. Petisi, Patricia Abagnale, Country Living Associates, Inc., Nancy W. Thorne and Dunlap-Hibbs Real Estate, Inc. On appeal, the plaintiff raises claims relating only to Abagnale, Country Living Associates, Inc., and the Petisis.

The following facts are relevant to our resolution of the plaintiff's appeal. In 1978, John P. Edel and Jacqueline P. Edel, the owners of a four and one-half acre estate on North Street in Fairfield, subdivided the parcel of land into two parcels, which became known as 2250 North Street and 2228 North Street. The Edels had a fenced in horse paddock, which was located on both parcels. The paddock area of the land is the focus of the current dispute.

In 1991, the Petisis purchased 2228 North Street from the Edels. When the Petisis purchased the property, the horse paddock was still in existence, but, because of the overgrown condition of the paddock land, the Petisis dismantled the portion of the fence that enclosed the paddock on their property. They asked the owners of the other parcel, 2250 North Street, if they could mow the tall grass up to the remaining portion of the fence, which was located on the other parcel. The owners granted permission, and, between 1992 and 1994, the Petisis maintained that parcel of land.

On June 1, 1994, the Petisis listed their property for sale with Abagnale, an agent of Country Living Associates, Inc. The Petisis provided Abagnale and Country Living Associates, Inc., with a written disclosure document. In response to the disclosure document question regarding encroachments, boundary disputes or easements affecting the property, the Petisis replied that a "[s]ection of [the] backyard is fenced in including [a ten foot by fifty foot section of the] neighbor's property."

In July, 1994, the plaintiff and her husband decided to move from New Mexico to Connecticut. The couple looked at several homes in a ten day period between July 11 and 20. After attending a broker's open house at the Petisis' home, Nancy W. Thorne, the plaintiff's real estate agent, took the plaintiff to look at the house. Although Thorne had spoken with Abagnale, she did

not wait for Abagnale before taking the plaintiff to view the property.

Shortly thereafter, the plaintiff visited the property with members of her family, Thorne and Abagnale. There were three to five additional visits in the days that followed. At one of the visits, the plaintiff and Thorne walked around the property. The plaintiff asked Thorne about the location of the boundaries. When Thorne replied that she did not know the boundaries of the property, she told the plaintiff that she would go inside and ask Abagnale. Upon her return, Thorne told the plaintiff that the boundary was the western side of the fence, which actually was located on the adjoining parcel, 2250 North Street.

The plaintiff offered to purchase the property for $1.25 million. After some difficult negotiations, the parties agreed on a sale price of $1.4 million. After the inspection of the property revealed a variety of problems, the Petisis signed the sales contract and an addendum dated August 24, 1994, promising, among other items, a $3000 credit at closing. In addition, the addendum provided that the Petisis would remove an in-ground oil tank and kerosene tank, and provide for the extermination of wasps, bats, carpenter ants and mice. The sales contract also provided that any improvements or appurtenances located on the Petisis' land were entirely within the boundaries of the property to be conveyed. The parties closed on September 26, 1994.

Prior to the closing, the plaintiff did not obtain a survey of the property. Instead, she relied on a 1982 survey of the property, which indicated the boundaries of the property without the fence. There is some dispute as to whether the plaintiff's attorney advised her to get a new survey done or whether it was suggested that the old survey be updated. Regardless, instead of obtaining a new survey, the plaintiff obtained an affida-

vit in lieu of a survey in which the Petisis stated that they had no knowledge of adverse rights, including easements, rights-of-way or encroachments.

Despite the affidavit, the seller's disclosure statement indicated that a portion of the land, which was partially fenced in, was not part of the property. The sellers' disclosure form, however, was not given to the plaintiff. Abagnale did not provide this to Thorne or to the plaintiff.

On April 23, 1996, the plaintiff received notice from the owners of 2250 North Street, the adjacent property, that they were asserting their rights to prevent her from adversely possessing a portion of their property. At issue was a .22 acre portion of the property that was fenced in and used by the plaintiff. Thereafter, the plaintiff, by complaint dated September 20, 1996, filed an action against the Petisis and the other parties involved in the sale of 2228 North Street. On February 5, 1997, Abagnale and Country Living Associates, Inc., filed an answer and, pursuant to Practice Book § 10-53, affirmatively pleaded contributory negligence as a special defense.

At trial, the jury found in favor of the Petisis but against Abagnale and Country Living Associates, Inc. The jury determined that Abagnale negligently had misrepresented the boundary lines of the property, but the jury also concluded that the plaintiff was 60 percent contributorily negligent. Consequently, Abagnale and Country Living Associates, Inc., were not liable for damages.

On June 23, 2003, the plaintiff filed a motion to set aside the verdict as to Abagnale, Country Living Associates, Inc., and the Petisis. The motion was denied and this appeal followed. Additional facts will be set forth as needed.

## I

On appeal, the plaintiff claims that the court improperly denied her request to instruct the jury regarding the inapplicability of comparative negligence.

The plaintiff first claims on appeal that the court improperly denied her request to charge. The requested supplemental charge[3] provided that the jury could not find the plaintiff contributorily negligent for failing to obtain a survey if the plaintiff relied on the defendants' misrepresentations regarding the property boundaries. The plaintiff contends that the law of Connecticut is well settled that if the failure to obtain a survey is a direct result of a negligent or intentional misrepresentation as to property boundary lines and if that misrepresentation is not open to discovery by inspection, the plaintiff's failure to obtain a survey does not constitute negligence. The plaintiff maintains that the case law on which she relies has not been overturned; therefore, contributory negligence does not apply. Accordingly, the plaintiff argues that the court was incorrect in omitting her requested instruction and charging the jury with an instruction that allowed for a finding of contributory negligence. We disagree.

---

[3] The supplemental request to charge provided: "1. Defendants claim plaintiff was negligent in failing to get a survey. If you find that there was a misrepresentation, whether negligent or intentional, about the westerly boundary, and if you find that the correct boundary was not open to discovery by inspection, then the failure of the plaintiff to obtain a survey is not contributorily negligent and you may not consider it. *Stevens* v. *Giddings*, 45 Conn. 507 (1878); *Lovejoy* v. *Isbell*, 73 Conn. 368 [47 A. 682] (1900); *Clark* v. *Haggard*, 141 Conn. 668, [109 A.2d 358] (1954).

"2. If the defendants, or any one of them, misrepresented the boundary by stating that the rail fence formed the westerly boundary toward the rear of the property, the failure of the plaintiff to get a survey was a natural consequence of the misrepresentation. That is why her failure to get a survey under these circumstances doesn't matter. *Clark* v. *Haggard*, [supra, 141 Conn. 673] ('It matters not that the plaintiff had the opportunity to have the land surveyed. His omission to have a survey made was a natural consequence of the fraudulent misrepresentations.')."

"We begin with our standard of review. A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted, internal quotation marks omitted.) *1525 Highland Associates, LLC* v. *Fohl,* 62 Conn. App. 612, 621, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001).

The following additional facts are relevant to our resolution of the plaintiff's claim. In their special defense to negligent misrepresentation, the defendants alleged that the plaintiff was contributorily negligent and that any damages suffered by the plaintiff were the result of her negligence because she failed to obtain a survey or review a survey map on file at the Fairfield town hall prior to purchasing the property. The plaintiff denied this special defense but later made a supplemental request to charge that, in essence, rendered the special defense inapplicable. On appeal, the defendants maintain that the case law and rule of law relied on by the plaintiff in her requested supplemental charge is inapplicable because it relates solely to fraudulent misrepresentation cases. Furthermore, they argue that such cases have been implicitly overruled by tort reform and the introduction of comparative negligence principles.

The court instructed the jury that the determination of whether the plaintiff was contributorily negligent is a question of fact.[4] Furthermore, the court instructed that if the defendants could prove that the plaintiff was negligent by failing to obtain a survey prior to the

---

[4] The court's instruction to the jury regarding comparative negligence provided: "The defendants, when they responded to this lawsuit, denied all the claims. . . . . [A]mong the claims they denied was the claim of negligent misrepresentation. When they filed that denial, they also filed what is called a special defense. In this special defense, they state that if there was a negligent misrepresentation, any loss that the plaintiff suffered was caused not by the negligent misrepresentation, but was caused by the plaintiff's own negligence. They claim that the [plaintiff] should have obtained a survey. This is called a defense of contributory negligence. The defendants claim that any harm that befell the plaintiff with respect to this claim came to her through her own contributory negligence.

"Whether she was contributorily negligent is a question of fact for you to decide. Whether the [plaintiff] should have gotten a survey depends upon the facts as you find them. Whether the survey would have disclosed the problem with respect to the western boundary is a question for you to decide. The defendants have the burden on this issue. There's a presumption that a person is acting in due care. . . . That presumption survives unless and until the defendants prove by the fair preponderance of the evidence that she was not acting in due care, that she was careless. The defendants have the burden of persuasion on their special defense of contributory negligence, and this special defense only applies to the claim of negligent misstatement.

"If the defendants have proven that [the plaintiff] was contributorily negligent, then two possibilities exist; either her claim of negligent misrepresentation is barred entirely or any recovery on that claim would be reduced in proportion to her negligence. If you find that she has proven the claim of negligent misstatement, and if you further find that she was contributorily negligent herself, then you would have to combine the negligence of all the parties, call that 100 percent, and then decide how much is attributable, how much fault is attributable to [the plaintiff].

"If [the plaintiff] was more than 50 percent at fault, she could not—she cannot recover under the negligent misrepresentation claim. If she was 50 percent or less at fault, then she could still—she would still recover under this claim, but her recovery would be reduced by her percentage of fault. . . .

"Now, that's the second type of claim, negligent misrepresentation. The defendants, acting in the course of a transaction in which [they] had a financial interest, supplied false information for the guidance of the other. The defendants failed to exercise reasonable care in obtaining or communicating the information, and the plaintiff justifiably relied on the information. The plaintiff suffered a monetary loss. With respect to this claim, you would

closing and that her negligence contributed to more than 50 percent of her loss, then recovery would be barred. If the plaintiff's negligence was found to account for less than 50 percent of her loss, then the plaintiff's recovery would be merely reduced.

We have reviewed the court's charge on comparative negligence in the context of the entire instruction, keeping in mind the allegations of the defendants' special defense and the law. On the basis of our review, we conclude that the court's instruction on comparative negligence did not mislead the jury.

The defendants contend that the same common-law rules applied in cases involving negligence are applied to cases involving negligent misrepresentation. Consequently, comparative negligence principles are applicable to cases involving acts of negligent misrepresentation. Connecticut courts have "long recognized liability for negligent misrepresentation. [Our courts] have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Citations omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 575, 657 A.2d 212 (1995).

consider whether or not the plaintiff was contributorily negligent. If she was—if she was greater than 50 percent, then she would be barred from recovering on this claim. If she was 50 percent or less at fault, then her recovery under this claim would be reduced by her percentage of fault."

Because negligent misrepresentation is a tort sounding in negligence, it is "consistent with [the] goal[s] for . . . comparative negligence [principles] to apply to the tort of negligent misrepresentation . . . ." Id., 586.[5]

As a result of tort reform, "the legislature abolished the common-law rule of joint and several liability and replaced it with a system based on principles of comparative fault." *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 23, 848 A.2d 418 (2004). "The purpose of comparative negligence is to ameliorate the harshness of the complete bar to liability resulting from the common law defense of contributory negligence. . . . This change in policy was accomplished by mandating a comparison by the fact finder of the relative degrees of negligence of the plaintiff and the defendant. [Section] 52-572h (b) provides that contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury [or damage to property] . . . if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought . . . . The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based upon the degree of the plaintiff's own negligence." (Citation omitted, internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 585–86. It is consistent with the purposes of comparative negligence principles to apply them to cases involving negligent misrepresentation.

The plaintiff maintains that despite the applicability of comparative negligence principles to actions for neg-

---

[5] See also annot., 22 A.L.R.5th 464, 471 (1994); *Gilchrist Timber Co.* v. *ITT Rayonier, Inc.*, 696 So. 2d 334, 339 (Fla. 1997).

ligent misrepresentation, we should find an exception to that rule that would render the defense inapplicable in cases concerning misrepresentations of property boundary lines. In support of her claim, the plaintiff cites a variety of cases concerning the *fraudulent* misrepresentation of property conditions in which a plaintiff's failure to obtain a survey prior to purchasing the property did not serve as a defense to a misrepresentation claim.[6] The plaintiff maintains that because our Supreme Court did not address that line of cases when it addressed the application of comparative negligence principles to negligent misrepresentation cases, we should treat a negligent misrepresentation claim in those types of cases as if it were a fraudulent misrepresentation claim. Although the plaintiff is correct that comparative negligence principles do not apply to cases involving fraudulent misrepresentation, we are not persuaded by her argument. Merely because our Supreme Court did not directly address the cases cited by the plaintiff when ruling on the applicability of comparative negligence principles to negligent misrepresentation claims does not mean that comparative negligence principles should not apply to cases involving the negligent misrepresentation of property boundary lines. The plaintiff suggests that the determination as to whether comparative negligence principles apply is not made on the basis of whether the misrepresentation was negligent or fraudulent but, rather, on whether the misrepresentation was material to the transaction. We decline, however, to adopt the plaintiff's suggestion and conclude that the court properly instructed the jury.

## II

### A

The plaintiff next claims that the court improperly denied her motion to set aside the verdict as to Abagnale

---

[6] See *Gibson* v. *Capano*, 241 Conn. 725, 733, 699 A.2d 68 (1997); *Johnson* v. *Healy*, 176 Conn. 97, 101–102, 405 A.2d 54 (1978); *Warman* v. *Delaney*, 148 Conn. 469, 473–74, 172 A.2d 188 (1961); *Clark* v. *Haggard*, 141 Conn.

and Country Living Associates, Inc. Even though the jury found that Abagnale and Country Living Associates, Inc., were negligent, they were not held liable because the jury found that their negligence caused less than 50 percent of the plaintiff's loss.

Our standard of review concerning a motion to set aside a verdict is well settled. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Maag* v. *Homechek Real Estate Services, Inc.*, 82 Conn. App. 201, 211–12, 843 A.2d 619, cert. denied, 269 Conn. 908, 852 A.2d 737 (2004).

The plaintiff's argument as to her claim is identical to her argument regarding the court's denial of her request to charge. Because we did not conclude that the instruction regarding comparative negligence was incorrect, we conclude that the court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.

## B

The plaintiff next claims that the court improperly denied her motion to set aside the verdict as to the

668, 673, 109 A.2d 358 (1954); *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 722, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).

Petisis. The plaintiff contends that the verdict absolving the Petisis of liability was unreasonable, illogical and contrary to the evidence, and, therefore, the court improperly denied her motion to set aside the verdict.

The standard of review concerning a motion to set aside a verdict is set forth in part II A.

The plaintiff contends that the Petisis should have been found liable for negligent or intentional misrepresentation because they made two written representations concerning the western boundary of the property that directly contravened the written property disclosure that they gave to Abagnale. Specifically, the plaintiff refers to the real estate rider for the contract for sale and the affidavit in lieu of survey.

The Petisis provided Abagnale with a written disclosure document in which they noted that a section of property that was partially fenced in was not part of their property. Abagnale failed to give this document to the plaintiff. In the real estate rider for the contract for sale dated August 24, 1994, the Petisis represented that any improvements were within the boundary of the property. Shortly thereafter, before the closing, the plaintiff obtained an affidavit from the Petisis in lieu of obtaining a survey. In the affidavit, dated September 28, 1994, the Petisis represented that they were not aware of any encroachments on the property. The plaintiff maintains that the last two documents were in direct conflict with the Petisis' statements in the initial disclosure document and, therefore, that the Petisis intentionally or negligently misrepresented the property boundary lines.

At trial, the Petisis maintained that they did not encroach on the land of the adjoining landowners, nor did they perform any act that changed or attempted to change the property boundary lines, and, therefore, they did not misrepresent the property boundary lines to

the plaintiff. The Petisis pointed out that the plaintiff's continued focus on the remaining portion of the fence on the adjoining property is misplaced. The Petisis did not build the fence, nor did they encroach on the portion of land that they did not own. The adjoining landowner gave the Petisis permission to mow the grass. There was no attempt by the Petisis to take this portion of the land for their own use. Merely because the Petisis pointed out, in a voluntary written disclosure, that the remaining portion of the fence was not located on their property, does not mean that the Petisis were making misrepresentations as to the boundary of the property line when they made a written representation that there were no encroachments on the property. We conclude, therefore, that the jury reasonably could have determined that the Petisis did not misrepresent the boundary lines and, therefore, that the court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.